NOT FOR PUBLICATION                                                                            CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES RICHARDSON,<br><br>                 Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                 Respondent. | Civil Action No.: 07-5593 (JLL)<br><br><br><br>OPINION |

**LINARES,** District Judge.

Currently before this Court is Petitioner James Richardson's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Respondent, the United States (hereinafter referred to as the "Government"), submitted an Answer in response to the motion. The Court has reviewed the parties' submissions and, for the reasons set forth below, denies Petitioner's motion.

## BACKGROUND

**A.      Criminal Information**

On September 30, 2005, the Jersey City Police Department received a tip about a man with a gun at the Booker T. Washington housing projects in Jersey City, New Jersey. The individual was described as a black male wearing a tan jacket. Upon arriving at the housing projects, the police officers observed a group of men begin to run, one of whom matched the description of Petitioner. Petitioner then threw his jacket to the ground, placed his hands on his waistband and removed a loaded Smith & Wesson .45 caliber revolver. In doing so, Petitioner tripped and fell, causing him to drop the gun. Allegedly, Petitioner got up and continued to run until he was apprehended by police officers. As a result of this incident, on January 12, 2006, a federal grand jury sitting in Newark,

New Jersey indicted the Petitioner for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

**B.     Guilty Plea and Sentencing**

On or about July 13, 2006, Petitioner signed a plea agreement wherein he pled guilty to the sole count of the indictment. In the plea agreement, both parties agreed not to seek any upward or downward sentence departure from the agreed total offense level of 23. See Plea Agreement at 7. Petitioner also expressly waived his right to file any appeal, collateral attack, or any other writ or motion, including an appeal under 18 U.S.C. § 3742 or a motion under 18 U.S.C. § 2255 should the Court determine that his applicable offense level under the Sentencing Guidelines was at or below level 23. See id. at 8.

On August 21, 2006, a plea hearing was conducted pursuant to Fed. R. Crim. P. 11, in which Petitioner was advised of the rights he was waiving by deciding to plead guilty to the offense and of the punishment he was exposed to by virtue of his plea.[1] Petitioner again repeatedly waived his

---

[1] An excerpt from Petitioner's plea hearing illustrating Petitioner's understanding of this waiver is as follows:

| | |
|---|---|
| Court: | Now, generally if the government or yourself feel that I made some kind of legal error in the in the issuance of your sentence, someone can appeal my sentence, either the Government or yourself. |
| | As part of your plea, however, you are agreeing under paragraph 8 that you are waiving your right to appeal my sentence or attack my sentence in any way with regard to the guideline range, if I find that the guideline offense level that applies to you is 23 or less. You waive your right to appeal. <br> . . . <br> Do you understand that? |
| Petitioner: | Yes. <br> . . . |
| Court: | Has [Mr. DeLuca] answered all questions that you had with regard to that |

right to challenge his sentence through an appeal or a motion brought pursuant to 28 U.S.C. § 2255 should the Court determine that his applicable offense level under the Sentencing Guidelines was at or below level 23. See Tr. (Aug. 21, 2006) at 15:5-17:3.  The Court also advised Petitioner that he was subject to a statutory maximum penalty of ten (10) years imprisonment. See id. at 12:12-14. Finally, Petitioner confirmed that he was not threatened into signing the plea agreement. See id. at 7:18-23.

On March 6, 2007, Petitioner was sentenced to a term of 84 months of imprisonment for being a felon in possession of a firearm in violation of 18 U.SC. § 922 (g)(1).

**C.      Petitioner's Section 2255 Claims**

Petitioner now asks the court to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  He asserts claims of ineffective assistance of counsel under the Sixth Amendment. In particular, he claims his counsel was ineffective for: (1) advising him to stipulate to a plea agreement wherein he waived his right to appeal or collaterally attack his sentence, instead of challenging the legality of his underlying arrest; and (2) informing him that a motion to suppress could not be filed in federal court.  In this regard, Petitioner requests an evidentiary hearing to determine whether his plea was entered into knowingly and voluntarily.

In addition, Petitioner claims the Court erred by: (1) failing to run his sentence concurrently with an undischarged state sentence; (2) imposing a two level sentencing enhancement because his firearm was stolen without conducting an evidentiary hearing to determine whether Petitioner knew

---

                    issue?

    Petitioner:    Yes.

Tr. (Aug. 21, 2006) at 15:5-17:3.

the firearm was stolen; and (3) relying on statements made by counsel that Petitioner was not threatened or coerced into signing the plea agreement instead of asking Petitioner during his plea hearing.

## **LEGAL STANDARD**

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Thus, Petitioner is entitled to relief only if he can demonstrate that he is in custody in violation of federal law or the Constitution.

In considering the instant 2255 motion, this Court "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Garvin, No. 06-1815, 2008 WL 803924, at *1 (3d Cir. March 27, 2008) (citing United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005)). Moreover, this Court "must order an evidentiary hearing to determine the facts unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." Government of Virgin Islands v. Forte, 865 F.2d 59, 62 (3d

4

Cir. 1989). With this framework in mind, the Court now turns to Petitioner's arguments.[2]

## LEGAL DISCUSSION

Petitioner presents several arguments in support of his request that this Court vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  However, the crux of Petitioner's argument is that his Sixth Amendment right to effective assistance of counsel was violated when his attorney incorrectly informed him that motions to suppress could not be filed in federal court, and in doing so, failed to properly challenge the legality of Petitioner's arrest under the Fourth Amendment.  Therefore, Petitioner contends that any waiver of his right to appeal or collaterally attack his sentence contained in his plea agreement should be deemed unenforceable because Petitioner did not enter the plea knowingly and voluntarily.  The Court will consider each of Petitioner's arguments, but must first consider whether Petitioner may bring the instant section 2255 motion at all, considering he waived his right to do so in his written plea agreement and orally at his plea hearing.

**A.     Implication of the Waiver**

A review of the record in this matter reveals that Petitioner has expressly waived his right to bring the instant 2255 motion both in his plea agreement and at his plea hearing.  See Plea Agreement at 8; Tr. (August 21, 2006) at 15:1-16:16. The relevant provision of Petitioner's plea agreement states:

> James Richardson knows that he has and, except as noted below in
> this paragraph voluntarily waives, the right to file any appeal, any
> collateral attack, or any other writ or motion, including but not limited
> to an appeal under 18 U.S.C. § 3742 or a motion under 18 U.S.C. §

---

[2] Given Petitioner's pro se status, the court will also construe the motion liberally.  See generally Haines v. Kerner, 404 U.S. 519, 520 (1972).

>2255, which challenges the sentence imposed by the sentencing court
>if that sentence falls within or above the Guidelines range that results
>from the agreed total Guidelines offense level of 23.

Plea Agreement at 8.  By challenging his sentence in a section 2255 motion,[3] Petitioner implicates the waiver.  Since the waiver is implicated, the Court must next consider whether the waiver is enforceable.

**B.      Validity of the Waiver**

In United States v. Khattak, the Third Circuit held that waivers of a right to appeal are valid if entered into knowingly and voluntarily unless enforcing such a waiver would result in a miscarriage of justice.  273 F.3d 557, 558 (3d Cir. 2001); see also United States v. Perry, 142 Fed. App'x 610, 611 (3d Cir. Aug. 8, 2005) (indicating that a waiver of the right to collaterally attack a sentence is likewise valid if it meets the Khattak test, i.e., that the waiver was entered into knowingly and voluntarily and that the enforcement of the waiver does not result in a miscarriage of justice).  Thus, this Court will enforce Petitioner's waiver, so long as the Court finds that it was entered into knowingly and voluntarily and that its enforcement does not otherwise work a miscarriage of justice.  See generally United States v. Mabry, No. 06-2867, 2008 WL 2875346, at *4 (3d Cir. July 28, 2008) (reaffirming that "a district court has an independent obligation to conduct an evaluation of the validity of a collateral waiver.").

**(i).     The Knowing and Voluntary Nature of the Waiver**

It is clear that Petitioner Richardson entered into his waiver knowingly and voluntarily.  The

---

[3] See Pet'r Motion to Compel Performance at 2 (arguing that his claims warrant "an automatic release from prison."); Pet'r Br. at 10 (requesting that the Court "vacate his sentence.").

plea agreement Petitioner signed states that he voluntarily waived his right to file any appeal or collateral attack. During the plea colloquy on August 26, 2006, Petitioner was asked if he had been threatened in any way into signing the plea agreement or if the signature on the agreement was not his. He indicated that he had not been threatened and that it was his signature which appeared on the agreement. See Tr. (Aug. 21, 2006) at 6:18-20. He also informed the Court that he understood his rights and that he was agreeing to voluntarily waive his right to appeal or collaterally attack his sentence should the Court sentence him within the guideline range for an offense level at or below 23. In light of the foregoing, it is the finding of this Court that Petitioner voluntarily waived his right to appeal or collaterally attack his sentence. See, e.g., Khattak, 273 F. 3d at 563 (holding that a waiver of the right to appeal is knowing and voluntary where the sentencing judge inquired as to whether the defendant understood his rights and defendant received a sentence within the terms of his plea agreement); Connallon v. United States, Civ. No. 08-1453, 2008 WL 2559309, at *2-3 (D.N.J. June 24, 2008) (holding that petitioner had voluntarily agreed to the waiver because the express terms of the agreement that he signed stated that he voluntarily agreed to the waiver).

The Court also finds that Petitioner knowingly waived his right to appeal or collaterally attack his sentence because he expressed to the Court, both in writing and orally during the plea colloquy, that he understood the terms of the plea agreement.[4] Petitioner's signed plea agreement

---

[4] To the extent that Petitioner argues that the Court should deem his waiver invalid on the basis that it was impossible for him to knowingly enter into the plea agreement given his counsel's alleged misrepresentation about the impermissibility of motions to suppress in federal court, the Court finds any such argument to be speculative, at best. The petitioner in Khattak similarly argued that as a matter of public policy waivers are invalid because defendants "cannot ever voluntarily and knowingly waive the right to appeal future errors." 273 F.3d at 560. In rejecting petitioner's argument, the Third Circuit noted that it is not uncommon for defendants to waive the legal consequences of unknown future events—for example, a defendant who waives the right to a jury trial when a jury might have rendered a positive outcome. Id; see also United

stated, "James Richardson knows that he has and . . . voluntarily waives, the right to file any appeal, and collateral attack . . . including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255." (Plea Agreement at 8). Moreover, during the Petitioner's plea colloquy, the Judge asked him if he understood the terms the waiver and if his counsel had adequately answered his questions related thereto. (Tr. (August 21, 2006) at 16:5-17:6). Petitioner responded affirmatively. (Id.). Accordingly, the Court concludes that Petitioner's waiver was knowing and voluntary. Thus, the Court will enforce Petitioner's waiver unless doing so would result in a miscarriage of justice.

### (ii). Miscarriage of Justice

Given the Court's finding that the collateral attack waiver was entered into knowingly and voluntarily, the Court may only reach the merits of Petitioner's claims in order to avoid a "miscarriage of justice." See United States v. Morrison, No. 06-1526, 2008 WL 2265283, at *2 (D.N.J. June 3, 2008) (citing Khattak, 273 F.3d at 563).[5] In determining when enforcement of a waiver of the right to appeal would result in a miscarriage of justice, the Third Circuit noted that its sister circuits have earmarked particular situations in which an otherwise valid waiver will be excused. See Khattak, 273 F.3d at 562-63 (discussing cases from the Second, Fourth, and Seventh Circuits). However, the Third Circuit declined to adopt a "blanket rule prohibiting all review of

---

States v. Shirriel, 264 Fed. Appx. 218, 220 (3d Cir. 2008) (finding that petitioner's waiver was enforceable when he claimed he did not enter his plea agreement knowingly because while the petitioner might not have known the outcome of the plea agreement, he did know that he was effectively waiving his right to appeal). Thus, the fact that a potential error was made or that another course of action could have resulted in a more favorable outcome has no direct bearing on whether Petitioner Richardson entered into his waiver knowingly.

[5] See generally United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007).

certain otherwise valid waivers of appeal" and further refused to "earmark specific situations" which would warrant invalidating such a waiver. Id. at 562-63.

Instead, the Third Circuit emphasized that the governing standard is whether "the error would work a miscarriage of justice." Id. at 563. The court endorsed the factors set forth by the First Circuit in United States v. Teeter, 257 F.3d 14 (1st Cir. 2001), to use as a guideline in such an analysis. These factors include: "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 26 (1st Cir. 2001)). The Third Circuit has also cautioned that "enforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [petitioner] from understanding his plea or from filing a direct appeal as permitted by his plea agreement would result in a miscarriage of justice." United States v. Shedrick, 493 F.3d 292, 298 (3d Cir. 2007). Accordingly, the Court will consider only those colorable claims of error raised by Petitioner which could, arguably, result in a miscarriage of justice should the Court enforce Petitioner's collateral attack waiver. Having considered each of Petitioner's claims, the Court finds only one claim to be potentially viable for such purposes.[6]

---

[6] Accordingly, the Court will not consider the merits of Petitioner's remaining claims, given that such claims – even if true – fall within the scope of the collateral attack waiver, and are insufficient to invalidate the waiver. Such claims of Court error include: (1) failing to run his sentence concurrently with an undischarged state sentence; (2) imposing a two level sentencing enhancement because his firearm was stolen without conducting an evidentiary hearing to determine whether Petitioner knew the firearm was stolen; and (3) relying on statements made by counsel that Petitioner was not threatened or coerced into signing the plea agreement instead of asking Petitioner during his plea hearing. Such claims – even if true – had no bearing on Petitioner's understanding of his plea or the waiver. Having found such a waiver to be valid, the

Counsel's Alleged Misrepresentation
Regarding Motion to Suppress

Petitioner claims that his counsel's failure to accurately advise him regarding his ability to file a motion to suppress the evidence in this case constitutes ineffective assistance of counsel, and that enforcing his collateral attack waiver would, therefore, result in a miscarriage of justice.[7] In particular, Petitioner claims that his attorney inaccurately informed him that motions to suppress "do not occur" in federal court.[8] Based on this misrepresentation, Petitioner alleges that he pled "guilty without understanding the criminal procedure he was afforded." (Pet'r Br. at 10).[9] Petitioner also presents a related Fourth Amendment claim alleging that the police officers did not have reasonable

---

Court may not consider any claims of error or ineffectiveness alleged by Petitioner which have no bearing on his understanding of the terms of the plea agreement, or the waiver itself, given that he waived his right to assert such claims in a 2255 motion. To do so would make a mockery of the collateral attack waiver to which Petitioner knowingly, willingly and intelligently agreed. See, e.g., Shedrick, 493 F.3d at 298 (noting that "enforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [petitioner] from understanding his plea . . . would result in a miscarriage of justice.") (emphasis added); Teeter, 257 F.3d at 25 n. 9 (noting that a miscarriage of justice would result if the "plea proceedings were tainted by ineffective assistance of counsel.") (emphasis added); United States v. Robinson, No. Civ. 04-884, Crim. 02-760, 2004 WL 1169112, at *4 (E.D. Pa. April 30, 2004) (refusing to excuse defendant's waiver of his right to bring section 2255 motion where defendant's claims of ineffective assistance of counsel were based on counsel's performance at sentencing as opposed to ineffectiveness in entering into plea agreement), appeal dismissed, 244 Fed. App'x 501 (3d Cir. 2007).

[7] Although Petitioner has not worded his argument as such, given his pro se status, the Court construes Petitioner's arguments liberally. See, e.g., Haines, 404 U.S. at 520.

[8] See Pet'r Br. at 8 (claiming that his attorney informed him that motions to suppress "do not occur" in federal court – only in state court).

[9] In support of his contention, Petitioner attaches a sworn affidavit indicating that on November 4, 2007 he called his attorney, Samuel DeLuca, and asked why he had lied about Petitioner's ability to file a motion to suppress in federal court. According to Petitioner, Mr. DeLuca responded that he "didn't care whether I filed a motion for ineffective assistance of counsel." (Richardson Affidavit, ¶ 3).

suspicion to believe that he was committing a crime or armed and dangerous, thereby rendering their investigatory stop and frisk illegal. (Pet'r Br. at 10). When read together, Petitioner essentially claims that (a) the police officers violated his Fourth Amendment right because they lacked reasonable suspicion to approach him thus rendering his underlying arrest unlawful and (b) had Petitioner been afforded a suppression hearing, Petitioner believes that the Court would have suppressed the gun on the basis of this Fourth Amendment violation. (Pet'r Br. at 3; 12-13).

As a preliminary matter, the Court notes that Petitioner's ineffective assistance of counsel claim directly ties his attorney's conduct in misrepresenting Petitioner's ability to file a motion to suppress the evidence in his case to the Petitioner's decision to enter into – and his understanding of – the plea agreement. See Pet'r Br. at 10. As a result, the Court will assume for purposes of this analysis that, given such circumstances, enforcement of Petitioner's collateral attack waiver could result in a miscarriage of justice.[10] See, e.g., Shedrick, 493 F.3d at 298 (noting that "enforcing a collateral-attack waiver where constitutionally deficient lawyering prevented [petitioner] from understanding his plea . . . would result in a miscarriage of justice.") (emphasis added). Thus, the Court will consider the merits of Petitioner's ineffective assistance of counsel claim.

### Strickland Test

In order to sustain an ineffective assistance of counsel claim, Petitioner must establish both deficient performance and resulting prejudice. See Strickland v. Washington, 466 U.S. 668, 697 (1984); see also Garvin, 2008 WL 803924 at *1. Under the first prong, deficient performance,

---

[10] In so stating, the Court reiterates that it takes no position on whether such circumstances would, in fact, result in a "miscarriage of justice," as defined by the Third Circuit. Because the Court finds that Petitioner's claim of ineffectiveness fails on the merits, the Court need not dwell on this issue.

counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Even if Petitioner is able to demonstrate deficient performance by counsel, Petitioner must also show that counsel's unprofessional performance actually prejudiced his defense. Id. The prejudice prong is satisfied if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Further, this Court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695 - 96. If a petitioner cannot demonstrate prejudice, however, then the court does not have to determine whether counsel's alleged errors were constitutionally deficient. See, e.g., id. at 697. Based on the reasons that follow, Petitioner's 2255 motion must still be denied because he has not demonstrated that his counsel's alleged deficiency – in failing to file a motion to suppress, or in misrepresenting the viability of same – prejudiced his case. In particular Petitioner has not demonstrated that but for his counsel's alleged error, there is a reasonable probability that the Court would have suppressed the gun at issue.

<u>Motion to Suppress</u>

    The Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV. "In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person," the United States Supreme Court has held that

"an unlawful search could not constitute proof against the victim of the search." Wong Sun v. United States, 371 U.S. 471, 484 (1963) (internal citation omitted).  Where a defendant seeks to suppress such evidence obtained from an unreasonable search or seizure, he or she has the initial burden of proof. See, e.g., United States v. Johnson, 63 F.3d 242, 245 (3d Cir. 1995) (internal citations omitted).

The Court has reviewed the record in this matter and finds that the record supports the conclusion that the police officers had reasonable suspicion to stop Petitioner, and sufficient probable cause to effectuate his arrest.  In assessing the reasonableness of a search and seizure, this Court's "inquiry is a dual one – whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry v. Ohio, 392 U.S. 1, 19-20 (1968).  Petitioner does not dispute that the police officers were dispatched to the courtyard of the Booker T. Washington Housing Projects in response to a tip from an anonymous caller that a black male at the housing projects, who was wearing a tan jacket, was in possession of a firearm.  (Pet'r Br. at 4).  Petitioner does not dispute that he met this description.  (Id.).  Petitioner concedes that once the police arrived at the courtyard, he began running away from them. (Id.).  Petitioner further concedes that, while running, he tripped and dropped his gun – in plain view of the police officers.  (Id.; 16).  Petitioner further acknowledges that he knew he had a gun in his possession on the date at issue.  See Tr. (Aug. 21, 2005) at 21:17-20.[11]  In light of the foregoing factors, the arresting officers had sufficient reasonable articulable

---

[11] Petitioner focuses, instead, on the fact that "nothing in the record suggested that the Officers had ordered the Petitioner . . . to stop running," and that "there was no evidence that the Petitioner refused to comply with any orders to stop." See Pet'r Br. at 14.  This factor is irrelevant, given that the officers saw Petitioner drop a weapon while running. Petitioner does not dispute this. See id. at 16.

suspicion to justify an investigatory stop and search of Petitioner pursuant to Terry, 392 U.S. at 30.[12]  See generally Illinois v. Wardlow, 528 U.S. 119, 126 (2000); United States v. Allen, 175 Fed. Appx. 536, 539 (3d Cir. 2006).  To the extent that Petitioner goes on to claim that the officers lacked probable cause to ultimately place him under arrest, Petitioner's argument is meritless given his concession that the officers witnessed him dropping a gun.  See, e.g., Illinois v. Wardlow, 528 U.S. at 126.  Thus, the failure of Petitioner's counsel to file a motion to suppress and his related pre-plea advice does not fall below an objective standard of reasonableness.[13]  See Strickland, 466 U.S. at 694; see, e.g., Jackson v. United States, 252 Fed. Appx. 918, 920, 921 (10th Cir. 2007) (finding that the record supported the conclusion that there was reasonable suspicion to stop the

---

[12] In Terry, the Third Circuit held that:

> Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

Terry, 392 U.S. at 30.

[13] Counsel's alleged misrepresentation regarding the viability of motions to suppress in federal court, would, of course, fall below the objective standard of reasonableness.  Because the Court finds that Petitioner has failed to show that he was prejudiced by not having filed such a motion, Petitioner's ineffective assistance of counsel claim nevertheless fails. See Strickland, 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

petitioner's vehicle and probable cause for his subsequent arrest him; therefore, the failure of his counsel to file a motion to suppress did not constitute deficient performance). Moreover, in light of the foregoing, the Court finds that Petitioner has failed to demonstrate that but for his attorney's failure to file a motion to suppress on the basis of the alleged Fourth Amendment violation, there is a reasonable probability that such motion would have been granted.[14] See Strickland, 466 U.S. at 694; see, e.g., McLeod v. United States, Civ. No. 06-669, 2007 WL 1959269, (D.N.J. July 5, 2007) (holding that Petitioner's counsel was not ineffective for failing to file a motion to suppress six intercepted wiretapped communications, and noting that "Petitioner has failed to show that a motion to suppress evidence of the intercepted communications would have succeeded."). Petitioner's ineffective assistance of counsel claim is, therefore, denied.

Accordingly, the Court concludes that Petitioner knowingly and willingly accepted the terms and conditions of his plea agreement, including his collateral attack waiver. The only claim of ineffectiveness arguably sufficient to invalidate the waiver fails to satisfy the two-part Strickland test. Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is, therefore, denied.

## CONCLUSION

Based on the reasons set forth herein, Petitioner's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is denied. The Court further finds that no certificate of

---

[14] Petitioner also asserts a related claim based on his counsel's alleged ineffectiveness in advising him to stipulate to a plea agreement, instead of challenging the legality of his underlying arrest. This claim – much like Petitioner's claim regarding counsel's failure to file a motion to suppress – hinges on whether it is reasonably probable that Petitioner's Fourth Amendment claim would have succeeded. Having found that it is not, this claim fails for the same reason.

appealability will issue because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(2).  An appropriate Order accompanies this Opinion.

/s/ Jose L. Linares<br>United States District Judge

DATED: September 3, 2008